## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JOSEPH JOHNSON,          :
           :
        Petitioner,    :     Civ. No. 17-8106 (KM)
           :
    v.           :     **OPINION**
           :
STEVEN JOHNSON, et al.,    :
           :
        Respondents.   :
           :

### KEVIN MCNULTY, U.S.D.J.

## I.  INTRODUCTION

Petitioner, Joseph Johnson, is a state prisoner proceeding pro se with a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Mr. Johnson has also filed a separate motion to amend his petition. For the following reasons, Mr. Johnson's petition and motion will be denied and a certificate of appealability shall not issue.

## II.  BACKGROUND

On direct appeal, the New Jersey Superior Court, Appellate Division summarized Mr. Johnson's state criminal proceedings, and the relevant evidence underlying his convictions, as follows:[1]

> At 8:30 a.m., on April 19, 2008, defendant entered Jacob's Delicatessen (the Deli) in Jersey City. He shouted "This is a robbery, bitch" several times and walked towards Ms. Fathia Elbahnasy, who was operating the lottery machine register in the back of the store. Defendant shoved Ms. Ann Johnson, a customer, aside and began to strike Elbahnasy in the back and neck. Defendant then pushed Elbahnasy down a small flight of stairs into the kitchen area and continued to strike her until a co-worker, Anirudha "Ani" Bangera,

---

[1]    State court factual findings are presumed correct unless rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

came to her assistance. When Bangera tried to grab defendant, defendant then turned and punched Bangera two or three times. Bangera released defendant, who then proceeded to enter the office of the Deli and attempted to kick open a window. Because a metal grill covered the outside of the window, defendant was unable to exit the store through the office. Instead, he walked back through the front door entrance and left the store empty-handed. Once outside, defendant tried unsuccessfully to kick open the door of another building before he turned back toward the Deli. At this point, Bangera locked the Deli's door after he and a few others retreated safely inside. From inside the store, Bangera saw defendant "grab[] hold of a vehicle" and struggle with its driver.

Paul Grigg was stopped at a traffic light at the intersection of Baldwin and St. Paul in Jersey City and saw defendant running down the street. Defendant then jumped in the passenger side window of Grigg's employer's Honda Element. Defendant said, "guess what, it's a robbery bitch" and pushed Grigg against the driver side door. Defendant used his elbow to pin Grigg against the driver's side door, and grabbed the steering wheel and slammed his foot on the gas. Grigg tried to maintain control of the vehicle by pressing the brake as the vehicle traveled north on Baldwin Avenue, but defendant continued to press the gas pedal. Defendant and Grigg struggled for control of the vehicle, and defendant tried to bite Grigg's hands to force him to release the steering wheel. As the car proceeded approximately ten blocks down Baldwin at a high rate of speed, it sped around a bus which skidded to a halt and narrowly missed striking two elderly women. When defendant forced the wheel to the left, the car skidded through an intersection, knocking over a traffic light and two street signs before finally coming to a stop.

Defendant then jumped over Grigg and out the driver's side window and ran up the block to the corner where he stopped. Almost immediately after Grigg called 9–1–1, a police car appeared "zooming down the street." Grigg flagged down the police car and told the officer to "get him, get him, the black man with the white long-sleeved shirt and shorts." Jersey City Police Officer Jeffrey Foxall reversed his cruiser and proceeded to arrest defendant, who offered no resistance.

Defendant was handcuffed and placed in the backseat of the police car. Officer Foxall brought defendant to the Deli because he matched the description of the robber that had been the subject of a recent police dispatch. Elbahnasy testified that the person seated in the police car was the same person who attacked her earlier that

> morning. Johnson, who had been in the Deli when the robbery took place, identified defendant in the police vehicle. Johnson also identified defendant as the man in the Deli when she viewed him in the holding cell in the precinct later that same day.
>
> At trial, Elbahnasy, Johnson and Bangera all identified defendant as the robber, and Grigg identified defendant as the carjacker.

*State v. Johnson*, No. A-1131-09T4, 2012 WL 762127, at *1–2 (N.J. Super. Ct. App. Div. Mar. 12, 2012).

Following a jury trial, Mr. Johnson was found guilty of second-degree robbery, in violation of N.J. Stat. Ann. § 2C:15-1, and carjacking, in violation of N.J. Stat. Ann. § 2C:15-2. *Id.* at *1. The Appellate Division affirmed Mr. Johnson's conviction and sentence. *Id.* at *11. The New Jersey Supreme Court denied Mr. Johnson's petition for certification. *State v. Johnson*, 64 A.3d 238 (N.J. 2013).

Thereafter, Mr. Johnson filed a Verified Petition for Post-Conviction Relief ("PCR") with the Superior Court of New Jersey, Law Division, Hudson County. (DE 6-7.) Following oral argument, the court denied Mr. Johnson's PCR in a written opinion dated March 6, 2014. (DE 6-11.) Mr. Johnson filed a timely notice of appeal. (DE 6-12.) On March 13, 2014, the Appellate Division temporarily remanded the matter to the PCR court for a ruling on claims that the PCR court had not addressed in its prior written opinion. (DE 6-14.) On March 31, 2015, the PCR court issued a supplemental decision denying the remainder of Mr. Johnson's claims. (DE 6-15.)

On August 1, 2014, during the pendency of Mr. Johnson's first PCR, he filed a second PCR before the Law Division. (DE 6-19, at 25.) Mr. Johnson's second PCR was denied as time barred. (DE 6-19, at 26.) The Appellate Division consolidated the two PCRs in their opinion dated July 21, 2016 and affirmed the denial of both. *State v. Johnson*, No. A-2754-14T3, 2016 WL 3919100,

at *6 (N.J. Super. Ct. App. Div. July 21, 2016). The New Jersey Supreme Court denied Mr. Johnson's petition for certification. *State v. Johnson*, 169 A.3d 973 (N.J. 2017).

Mr. Johnson also filed a motion for a new trial based on newly discovered evidence with the Law Division. (DE 6-23.) The court denied his motion on January 27, 2016, finding that the evidence was "not newly discovered, clearly exculpatory, or of the sort that would probably change the jury's verdict if a new trial were granted." (*Id.*) The Appellate Division affirmed the trial court's ruling. *State v. Johnson*, No. A-1409-16T3, 2018 WL 1415590, at *2 (N.J. Super. Ct. App. Div. Mar. 22, 2018). The New Jersey Supreme Court denied Mr. Johnson's request for certification. *State v. Johnson*, 193 A.3d 298 (N.J. 2018).

On October 11, 2017, Mr. Johnson filed the instant § 2254 Petition. (DE 1.)  On February 2, 2018, Respondents submitted their answer. (DE 6.)  Mr. Johnson thereafter filed a traverse. (DE 9). Almost one year later, on January 24, 2019, Mr. Johnson filed a motion to amend his habeas petition, attempting to assert a new claim. (DE 10.) I denied this motion without prejudice because Mr. Johnson failed to describe the claim he sought to add. (DE 13.) However, I permitted Mr. Johnson to file a renewed motion to amend which described the new claim he wished to raise. (*Id.* at 3.) On October 7, 2019, Mr. Johnson filed a renewed motion to amend. (DE 14.) Respondents did not file opposition to either Mr. Johnson's initial or renewed motion to amend.

## III.    STANDARD OF REVIEW

An application for a writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution, laws, or treaties of the United States.  *See Engle v. Isaac*, 456 U.S. 107, 119 (1982); *see also Mason v. Myers*, 208 F.3d 414, 415 n.1 (3d Cir. 2000) (citing 28 U.S.C. § 2254). Mr. Clifton-Short filed this petition for writ of habeas corpus after April 24, 1996, thus, the Antiterrorism and Effective Death Penalty Act of 1996

4

("AEDPA"), Pub. L. 104–132, 110 Stat. 1214 (Apr. 24, 1996), applies. *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Under AEDPA, federal habeas corpus relief is unavailable for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d).

As a threshold matter, a court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *See Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)). "'[C]learly established federal law' under § 2254(d)(1) is the governing legal principle set forth by the Supreme Court at the time the state court renders its decision." *Id.* (citations omitted). A federal habeas court making an unreasonable-application inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *See Williams v. Taylor*, 529 U.S. 362, 409 (2000). Thus, "a federal court may not issue a writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. The AEDPA standard under § 2254(d) is a "difficult" test to meet and is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The petitioner has the burden of proof and, with respect to § 2254(d)(1), review "is limited to the record that was before the state court that adjudicated the claim on the merits." *See id.*

In applying AEDPA's standards, the relevant state court decision that is appropriate for federal habeas corpus review is the last reasoned state court decision. *See Bond v. Beard*, 539 F.3d 256. 289-90 (3d Cir. 2008). Furthermore, the court will assume that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see also Wilson v. Sellers*, 138 S. Ct. 1188, 1194 (2018). Additionally. AEDPA deference is not excused when state courts issue summary rulings. For example, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 62 U.S. 86, 99 (2011) (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989)).

In addition to the above requirements, a federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(1)(A). To do so, a petitioner must "'fairly present' all federal claims to the highest state court before bringing them in federal court." *See Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (citation omitted). This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'" *See id.* (citations omitted). To the extent that a petitioner's constitutional claims are unexhausted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn.* 504 F.3d 416, 427 (3d Cir. 2007); *Bronshtein v. Horn*, 404 F.3d 700. 728 (3d Cir. 2005).

## IV.   DISCUSSION

### A.  Ineffective Assistance of Counsel

The sole claim in Mr. Johnson's habeas petition is that his trial counsel was ineffective for

consenting to an amendment of the indictment from attempted robbery to robbery. (DE 1, at 6.) Mr. Johnson argues that trial counsel did not advise him of the proposed change to the indictment and that trial counsel's consent to the amendment improperly denied Mr. Johnson the opportunity to have his case represented to the grand jury. (DE 7, at 3-9.)

Mr. Johnson first raised this claim during his PCR proceedings. (DE 6-7, at 3.) He argued that if the amended indictment had been presented to the grand jury, "there is the chance that the grand jury would not have indicted [him] for Robbery." (DE 6-10, at 1-2). He further asserted that a second presentment would have provided trial counsel with the opportunity to "identify potential inconsistencies in the witnesses' statements" between the first and second grand jury proceedings. (*Id.*) The Appellate Division denied this claim, holding that Mr. Johnson had not established that he was prejudiced as a result of trial counsel's consent to the amendment. *Johnson*, 2016 WL 3919100, at *4. The Appellate Division stated that Mr. Johnson provided only bald assertions about what could have occurred if there had been a second presentment to the grand jury and "fail[ed] to proffer a factual basis supporting his allegation of prejudice." *Id*. The Appellate Division also determined that trial counsel had not been deficient because there was no error in amending the indictment. *Id*. at *3. The Appellate Division reasoned that robbery includes attempted robbery and that the "amendment did not change the substance of the offense." *Id.* It stated, in pertinent part:

> In this case, the amendment to the indictment removed the language "*in the course of purposely attempted [sic] to commit a theft,* knowingly did use force upon [the victim], contrary to the provisions of *N.J.S.[A.]* 2C:5–1 and 2C:15–1" from count one, and replaced it with "*in the course of committing a theft,* knowingly did use force upon [the victim], contrary to the provision *of and [sic] [N.J.S.A.] 2C:15–1.*" (Emphasis added). Although count one of the original indictment was labeled "Attempted Robbery," it set forth the statutory language of robbery, namely "in the course of ... commit[ting] a theft," which by definition includes the "attempt to

> commit a theft," *N.J.S.A.* 2C:15–1(a). Since the amendment did not change the substance of the offense, there was no error.

*Id.* (emphasis in original) (footnotes omitted). Moreover, citing *Strickland*, the Appellate Division held that strategic decisions of trial counsel are "virtually unchallengeable . . . except in those rare instances where they are of such a magnitude as to thwart the fundamental guarantee of [a] fair trial." *Id.* at *4 (alterations in original) (internal quotation marks and citations omitted).

The Sixth Amendment guarantees defendants effective assistance of counsel during critical portions of a criminal proceeding. *Lafler v. Cooper*, 566 U.S. 156, 165 (2012). The Supreme Court, in *Strickland v. Washington*, 466 U.S. 668 (1984), articulated a two-prong burden for demonstrating the ineffectiveness of counsel: (1) that, considering all relevant circumstances, counsel's performance fell below an objective standard of reasonableness; and (2) that the petitioner suffered prejudice as a result. *Id.* at 687–96; *see also Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013).

In addressing the first prong, the petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Judicial scrutiny of counsel's conduct must be "highly deferential." *Id.* at 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Counsel's strategic choices made after thorough investigation of the relevant law and facts are "virtually unchallengeable," while choices made with less than thorough investigation "are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91; *see also Rolan v. Vaughn*, 445

8

F.3d 671, 682 (3d Cir. 2006); *Gov't of V.I. v. Weatherwax*, 77 F.3d 1425, 1432 (3d Cir. 1996). Whether counsel acted in a deficient manner is measured by a standard of "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 687–88; *see also Wiggins v. Smith*, 539 U.S. 510, 521 (2003).

The second prong of the *Strickland* test requires the petitioner to prove resulting prejudice. *Strickland*, 466 U.S at 693. Prejudice is generally found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*; *see also McBride v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 102 n.11 (3d Cir. 2012). "This does not require that counsel's actions more likely than not altered the outcome, but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (internal quotation marks and citation omitted).

*Strickland* made it clear that a court may apply the two prongs in whichever order it sees fit. *Strickland*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies ... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed."); *see also Rainey v. Varner*, 603 F.3d 189, 201 (3d Cir. 2010).

The ineffective assistance issue here receives a second level of deference. Strictly speaking, I am not reviewing whether counsel's assistance was ineffective; I am reviewing the state courts' determination that counsel's assistance was *not* ineffective. To warrant relief, the state court's

application of the *Strickland* standard must have been not merely incorrect but unreasonable. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

Here, Mr. Johnson has not shown that he received ineffective assistance of trial counsel. New Jersey Court Rule 3:7-4 permits a state court to amend an indictment "to correct an error in form or the description of the crime intended to be charged or to charge a lesser included offense provided that the amendment does not charge another or different offense from that alleged and the defendant will not be prejudiced thereby in his or her defense on the merits." N.J. Ct. R. 3:7-4. Johnson's counsel consented to the amendment; the issue is whether the state court ruled unreasonably in finding that his consent did not constitute ineffective assistance.

Mr. Johnson's indictment was amended from second degree attempted robbery to second degree robbery. (*Compare* DE 6-2 (original indictment); *with* DE 6-3 (amended indictment).) The indictment originally charged the offense by citing the general attempt provision (N.J. Stat. Ann. § 2C;5-1) and the robbery provision (N.J. Stat. Ann. § 2C:15-1(a)(1)), which applies if a person "in the course of committing a theft, he [. . .] inflicts bodily injury or uses force upon another." *Id.* The offense is indeed more directly charged as a simple violation of N.J. Stat. Ann. § 2C:15-1(a)(1) itself, and that was the point of the amendment. As the Appellate Division pointed out, section 2C:15-1(a)(1) encompasses the attempt offense by means of a definition: "An act shall be deemed to be included in the phrase 'in the course of committing a theft' if *it occurs in an attempt to commit theft*…" N.J. Stat. Ann. § 2C:15-1(a) (emphasis added). Thus, the Appellate Division considered that, as a matter of state law, the amendment "did not change the substance of the offense." *Johnson*, 2016 WL 3919100, at *3 (emphasis added).

10

More to the point, however, the state court ruled reasonably that counsel was not ineffective in *consenting* to this amendment. There was no chance that withholding consent would have avoided a § 2C:15-1(a) charge. The State always had the option to re-present the matter to a second grand jury and obtain a superseding indictment, with the charging language amended, based on the same facts. To consent thus fell within the broad bounds of reasonable strategy.[2]

Nor is there a showing of prejudice. Defendant suggests two forms of prejudice, but neither is substantial in light of the record.

*First*, defendant argues that his counsel's consent to the amendment exposed him to an enhanced charge of actual robbery, rather than attempt. But it was a foregone conclusion that, if counsel did not consent, the State could simply reindict the case. The probability that a second grand jury would refuse to indict for robbery was virtually nil (and if it did, the State could simply try again). The essential legal elements were unchanged, the second presentation would have involved no more than a revision to some charging language, and "the facts supporting the two indictments were the same." *Johnson*, 2016 WL 3919100, at *3–4. Amendment, one way or another, was inevitable, so consenting to it could not have resulted in prejudice.[3]

*Second,* Mr. Johnson argues that he was prejudiced by counsel's consent because he would have benefited from a second presentment to a grand jury. In particular, he says, the grand jury

---

[2]     Nor would an objection necessarily have been successful. *See* N.J. Ct. R. 3:7-4.

[3]     There is an alternative way to conceptualize the lack of prejudice from counsel's decision. The statute merges the two forms of the offense, in that using force in the course of a robbery is defined to include using force in the course of an attempted robbery. Although the statute may thus be violated via an actual or an attempted robbery, there is no genuine possibility that the jury could have been mistaken about whether the robberies succeeded; the evidence showed that Mr. Johnson left the store empty-handed, and did not succeed in wresting the car from the driver. Counsel could legitimately have judged that the consenting to amendment, which was inevitable anyway, would not result in enhancement of the defendant's culpability in the jury's eyes.

might have declined to indict him for robbery. As noted, that is a speculative and highly unlikely outcome.

But at least, says defendant, in a second grand jury proceeding the witnesses might have testified inconsistently, opening an avenue for cross-examination. The Appellate Division discounted this argument as speculative, and I agree. *Johnson*, 2016 WL 3919100, at *4. There is no basis for theorizing that the witnesses' testimony would have differed as between the two grand jury sessions. In any event, trial afforded a sufficient opportunity to test these witnesses' credibility and explore any inconsistencies through cross-examination. As it happened, the testimony was found persuasive by both the grand jury and the trial jury. At trial, Ms. Elbahnasy, Ms. Johnson, and Mr. Bangera each identified Mr. Johnson as the individual who had entered the delicatessen, shouted "This is a robbery, bitch," and assaulted them. *Johnson*, 2012 WL 762127, at *2. Mr. Grigg also testified at trial that Mr. Johnson was the individual who had carjacked his vehicle. *Id*.

There is no indication that trial counsel acted in a deficient manner by consenting to the amendment of the indictment, or that Mr. Johnson suffered prejudice as a result. Accordingly, Mr. Johnson has not shown that the Appellate Division's adjudication of his ineffective assistance of counsel claim was contrary to, or an unreasonable application of *Strickland*. Mr. Johnson's ineffective assistance of counsel claim is denied.

### B.  Motion to Amend

Mr. Johnson also filed a motion to amend his habeas petition. (DE 14.) The Federal Rule of Civil Procedure governing pleading amendments, Fed. R. Civ. P. 15, also applies to motions to amend habeas corpus petitions. *Mayle v. Felix*, 545 U.S. 644, 654-55 (2005). This rule provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15. Generally, a petitioner should be afforded the opportunity to test his claim on the merits unless

there is an "apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1964).

In Mr. Johnson's motion to amend, he seeks to add a claim that the State committed a *Brady*[4] violation. (DE 14-1.) Mr. Johnson asserts that after his direct appeal concluded, his PCR counsel discovered additional surveillance videos of the crime that had not been turned over during discovery. (*Id*. at 3-5.) These videos, he says, establish that he was not the perpetrator because the individual on one of the videos was wearing different clothes from those worn by Mr. Johnson that day. (*Id*. at 5.) Mr. Johnson contends that if he had been able to present this video to the jury, it might have created a reasonable doubt as to the witnesses' identifications of Mr. Johnson as the perpetrator. (*Id*.)

Mr. Johnson first raised this issue in his motion for a new trial before the state court. (DE 23, 24.) The Appellate Division denied the claim, holding that it was without sufficient merit to warrant extended discussion:

> It is clear from the record that defendant misconstrued the import of PCR counsel's references to a video surveillance tape in correspondence with defendant. There was only one surveillance tape capturing the robbery, which was turned over by the State in discovery.
>
> Previously, the PCR judge who viewed the surveillance tape rejected defendant's assertion that it was clearly exculpatory "because it [did] not show that it was someone other than [defendant] who committed the offense." According to the PCR judge, "[t]he face the of perpetrator [was] not clear and [d]efendant was wearing the same clothing depicted in the video at the time of his arrest moments after the offense."

---

[4]     *Brady v. Maryland*, 373 U.S. 83 (1967).

> In *Carter*, the Court set forth the elements that a defendant must meet in order to prevail on a new trial motion. The newly discovered evidence must be (1) material, meaning not merely cumulative, impeaching, or contradictory; (2) the evidence must have been discovered after the trial and not discoverable by reasonable diligence beforehand; and (3) the evidence must be of the type that would probably change the jury's verdict at a new trial. *Id.* at 314. Here, defendant failed to meet the *Carter* standard. As such, defendant's motion for a new trial was properly denied.

*Johnson*, 2018 WL 1415590, at *2 (alterations in original).

A state has a due process obligation to a defendant to disclose any material evidence that is favorable to the defense. *Kyles v. Whitley*, 514 U.S. 419, 433 (1995); *Giglio v. United States*, 405 U.S. 150 (1972); *Brady v. Maryland*, 373 U.S. 83 (1967). To establish a *Brady* violation under federal law, a petitioner must show that: 1) the evidence at issue was favorable to his defense because it was either exculpatory or impeaching; 2) the evidence was either willfully or inadvertently suppressed by the State; and 3) the petitioner suffered prejudice. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Evidence is considered material only if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985); *see also Kyles*, 514 U.S. at 434 ("The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence"); *United States v. Agurs*, 427 U.S. 97, 112 (1976) ("It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed").

Here, Mr. Johnson has not shown that the State committed a *Brady* violation. I am required to defer to the state court's factual findings that there is only one video in question, that it was

turned over in discovery, that it did not clearly show the perpetrator's face, and that Mr. Johnson was, in fact, wearing the same clothing when he was arrested that the perpetrator wore in the video. *Johnson*, 2018 WL 1415590, at *2.[5] The Appellate Division's adjudication of this claim was not contrary to, or an unreasonable application of, clearly established federal law. As a result, Mr. Johnson's motion to amend will be denied because the claim is futile.

## C.  CERTIFICATE OF APPEALABILITY

A petitioner may not appeal from a final order in a habeas proceeding where a petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). I find that none of the claims raised in Mr. Johnson's § 2254 meet this standard, and I will accordingly decline to issue a certificate of appealability.

## V.  CONCLUSION

For the foregoing reasons, Mr. Johnson's § 2254 petition will be denied on the merits. Mr. Johnson's motion to amend will be denied, after consideration of the merits, as futile. A certificate of appealability shall not issue.  The accompanying Order will be entered.

DATED:  December 31, 2020                              /s/ Kevin McNulty

                                                                    _____
                                                                    KEVIN MCNULTY
                                                                    United States District Judge

---

[5]       Relatedly, there was no error, let alone error requiring habeas relief, in the state court's denial of the motion for a new trial so that the video could be played for the jury. The state court found that there were not additional videos, and that the one video that did exist was turned over in discovery and was not exculpatory. In addition, four eyewitnesses to the crime positively identified Mr. Johnson as the perpetrator. Mr. Johnson has not established that any failure to play the video at trial, assuming that occurred, would undermine confidence in the outcome of the verdict.